Suzanne TAVOLETTI, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary
of Health and Human Services,
Defendant.

Civ. A. No. 89–144.

United States District Court,
W.D. Pennsylvania.

Dec. 12, 1989.

George P. Geyer, Jr., Pittsburgh, Pa., for plaintiff.

Amy Reynolds Hay, Asst. U.S. Atty., for U.S.

## OPINION

D. BROOKS SMITH, District Judge.

Plaintiff Suzanne Tavoletti brings this action under sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. § 405(g) and 1383(c)(3), to review a final determination of the Secretary of Health and Human Services denying her application for disability insurance benefits and supplemental security income benefits based on disability. Both parties have moved for summary judgment pursuant to Fed.R.Civ.P. 56(e). For the reasons stated below, defendant's motion is granted and plaintiff's motion is denied.

Plaintiff applied for Disability Insurance Benefits on September 17, 1986. Certified Transcript ("Tr.") of the administrative record at 65–68. Her claim was denied initially on November 25, 1986 (Tr. at 69–71), and again upon reconsideration on June 16, 1987 (Tr. at 74–75). Thereafter, plaintiff requested a hearing (Tr. at 76–77) which was held on May 19, 1988 (Tr. 22–64) before Administrative Law Judge Roland Mather ("ALJ"). The ALJ denied plaintiff's claim on August 24, 1988 (Tr. at 11–17). Plaintiff then requested a review by the Appeals Council (Tr. at 7). That request was denied on November 29, 1988 (Tr. at 4–5), rendering the ALJ's decision the final decision of the Secretary.

Plaintiff's complaint seeks a review of the Secretary's final decision pursuant to Section 205(g) of the Act, as amended, 42 U.S.C. § 405(g). Our review is limited to a determination of whether the Secretary's findings are supported by substantial evi-

dence. *Id.* Findings supported by substantial evidence are conclusive, where substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1981) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Absent substantial evidence to support the findings, we may modify, remand or reverse the Secretary's decision. 42 U.S.C. § 405(g).

Plaintiff is a female, 49 years of age at the time of the ALJ hearing, who applied for benefits on the basis of osteoarthritis in her back and right knee. (Tr. at 65). The substance of plaintiff's claim is that she is disabled from "physical impairments of post lumbar laminectomy, total right knee replacement secondary to degenerative arthritis, degenerative disc disease at T12–L1 and L5–S1, compression deformity with slight wedge configuration of the T12 vertebrae body." Plaintiff's Motion for Summary Judgment, ¶ VIII(a).

Under the law, our review of the ALJ's decision must follow the sequential analysis set forth in the Social Security Regulations. *See* C.F.R. § 416.920. This analysis establishes a framework for determining whether an individual is disabled according to the regulations. The first inquiry is whether the plaintiff is performing any substantial gainful activity. If so, the plaintiff is not disabled and the inquiry is concluded. 20 C.F.R. § 416.920(b). If not, we must scrutinize whether the individual has a severe impairment as defined by the applicable regulations.

A severe impairment may be established by showing that a claimant is unable to perform basic work activities, or by demonstrating that the plaintiff's physical and/or mental conditions meet the criteria of a listing in the appendix of impairments. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter Appendix 1). If an individual's condition satisfies the requirements of a listed impairment, the plaintiff is automatically determined to be disabled and benefits are awarded. 20 C.F.R. § 416.920(c), (d).

If a plaintiff's impairment, though severe, fails to satisfy the criteria of a listed impairment, the individual must prove she is unable to perform past relevant work. If the plaintiff satisfies this burden of proof, then the Secretary must show that the individual has the residual functional capacity to do other work. 20 C.F.R. § 416.920(e), (f).

In the instant case, the plaintiff was not performing any substantial gainful activity. (Tr. at 30, 49). Therefore, the plaintiff's impairments must be assessed to determine if they were severe. Plaintiff's application for benefits alleged a disability on the basis of osteoarthritis. (Tr. at 65). Plaintiff testified that her claim is based on injuries to both her back and right knee. (Tr. at 49). Plaintiff testified that she had pain, but that she cannot take any medications for relief from the pain due to her allergies. (Tr. at 45, 49–50).

Plaintiff's medical records reveal a history of lumbar laminectomy in March 1985. (Tr. at 109). Upon discharge, plaintiff was described as ambulating and without leg pain. *Id.* Subsequently, in September 1985, plaintiff suffered a minor relapse while lifting groceries into a cart. (Tr. at 123, 126). Plaintiff was seen at a rehabilitation clinic on an outpatient basis for approximately five and a half weeks during the months of November and December, 1985 as a result of the relapse. (Tr. at 123–25). Plaintiff's physical therapy essentially resolved the pain, and her gait and station were described as "good" by her treating physician; plaintiff was released to return to work as of December 1, 1985. (Tr. at 126).

Plaintiff was diagnosed for osteoarthritis in her right knee in or about August, 1986. (Tr. at 128–31). Plaintiff was admitted to Mercy Hospital of Pittsburgh for approximately two weeks for elective right total knee arthroplasty at this time. (Tr. at 129). The procedure was performed without complication and plaintiff's postoperative recovery was described as "unremarkable." *Id.* Her treating physician reports that she

"did well following surgery." (Tr. at 161). At time of discharge, plaintiff could not straight leg raise and her range of motion in the right knee was negative 15 degrees to 60 degrees. (Tr. at 129). Subsequent physical exams revealed the range of motion in plaintiff's right knee had increased to 90 degrees. (Tr. at 143). On a follow-up report, in October 1986, plaintiff's treating physician found her to be walking and to have full flexion in the right knee without pain. (Tr. at 142). The most current medical evidence of record reveals that plaintiff suffers a swollen right knee joint with a slightly limited range of motion and subjective complaints of pain in the right lower back area associated with obesity. (Tr. at 152). At the hearing, plaintiff also complained of falling incidents. (Tr. at 38, 45, 51). However, there was no medical evidence of record to support this claim.

Plaintiff lives with her husband and family in a two-story home. She cooks some meals, does her own dishes, light laundry and light housework. Plaintiff does the shopping with assistance from her sister-in-law. (Tr. at 39–41). Plaintiff does not drive, although she does have a driver's permit. (Tr. at 38). She predicts that at the most she can lift ten pounds. (Tr. at 43).

The ALJ found that plaintiff walks with an antalgic gait, uses a cane and displays some swelling and tenderness of the right knee. (Tr. at 14). While finding that plaintiff's symptoms limited her ability to do basic work activities which required an extensive amount of standing or walking, the ALJ rejected plaintiff's assertion that she meets the criteria of any of the muscular skeletal system's listed impairments. *See* § 1.02, 1.03, 1.05 of Appendix 1. The ALJ found plaintiff fails to satisfy the criteria of the listed impairments because her medical reports reflect neurological evaluations of her knee within normal limits and that results of testing of her musculature and deep tendon reflexes also were normal.

The listed impairments pertaining to arthritis in Appendix 1 require either significant restriction of the function of the affected joint or marked limitation of the motion of the affected joint. In the instant case, the record is devoid of any evidence pertaining to a significant restriction or a marked limitation. Instead, the record contains evidence of only mild limitation of plaintiff's range of motion in her right knee and, to the contrary of an assertion of marked limitation, that plaintiff is ambulatory without significant pain. We conclude that the ALJ's determination that the plaintiff failed to satisfy the listed impairments pertaining to arthritis is supported by substantial evidence.

Inasmuch as the plaintiff has failed to satisfy the requirements of any of the listed impairments, she is not automatically disabled. However, the ALJ concluded that the plaintiff had a severe impairment in that she was unable to perform basic work activities because of her physical impairments, *i.e.*, her inability to perform work requiring an extensive amount of standing or walking. (Tr. at 14). We also conclude that the ALJ's decision that the plaintiff had a severe physical impairment is supported by substantial evidence. Therefore, we must determine whether the plaintiff is capable of performing her past relevant work. In the instant case, plaintiff's past work experience includes positions as a grocery store cashier, hotel maid and nursing home attendant. The ALJ determined that plaintiff was incapable of performing any of her past relevant work, (Tr. at 15), which conclusion is supported by substantial evidence of record. (Tr. at 30–35, 42, 147, 152).

Therefore, we must turn to whether the Secretary has satisfied its burden of proving that "the claimant, given her age, education and work experience, has the capacity to perform specific jobs that exist in the national economy." *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir.1979).

To determine whether the plaintiff is capable of performing other work in the national economy, the ALJ had to determine what type of work she was capable of performing. The ALJ concluded that

> The evidence of record reveals that claimant is a younger individual, has a limited education, has acquired no work

skills in performing her past work, and retains the functional capacity to perform a limited range of work of a light exertional nature. The Administrative Law Judge specifically rejects the claimant's contention that she is unable to read, as the evidence of record indicates that claimant herself stated that she was able to supervise ten employees, stock shelves in a supermarket, and work as a cashier without difficulty, job duties which are not consistent with an allegation of illiteracy.... as claimant is unable to perform the full range of light work due to her inability to perform prolonged standing and walking, the testimony of a vocational expert was taken to determine whether there are jobs existing in significant numbers in the economy which claimant would be capable of performing. The vocational expert testified that there were significant jobs as a motel clerk and as an invoice extender which would allow claimant to alternate sitting and standing positions at will. He further noted that claimant would be capable of performing these jobs even if she required a cane for ambulation. As the evidence of record indicates that there are significant jobs existing in the economy which claimant is capable of performing in spite of her impairments, it must be found that the claimant is not disabled within the meaning of the Social Security Act and Regulations and, therefore, is not entitled to a period of disability and disability insurance benefits.

Tr. at 15.

Once the ALJ determines the level of work that a plaintiff is capable of performing in conjunction with that individual's education and work experience, the ALJ can utilize the Grids of Appendix 2 to determine if the plaintiff is or is not disabled. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Section 200.00(d) (hereinafter "Appendix 2"). In the instant case, the ALJ considered whether the plaintiff's strength limitations alone would direct a finding of disabled. Table No. 2 of Appendix 2, however, directs that a younger individual, either literate or illiterate, with a capacity for light work and with unskilled previous

work experience is not disabled. Appendix 2, Table No. 2, Sections 202.16–17. The ALJ then proceeded to apply the grids to the plaintiff's specific vocational profile, and concluded that Section 202.17 of the grids of Appendix 2, Table No. 2 directs a finding that the plaintiff is not disabled.

Because the ALJ found that plaintiff could not perform a full range of light work due to her inability to perform prolonged standing and walking, the ALJ next proceeded to determine whether or not there were positions available for the plaintiff to perform within the national economy. The ALJ took evidence from a vocational expert who testified that there were significant jobs in the market as a motel clerk or invoice extender which claimant is qualified to perform despite her physical impairments if she is literate. (Tr. at 56–57). On the basis of the expert's opinion, the ALJ concluded that the plaintiff was capable of doing other work available in the national economy and, therefore, that she was not disabled.

■ We conclude that the ALJ's determination is supported by substantial evidence. The ALJ carefully reviewed the record of the plaintiff. The ALJ carefully considered the fact that the plaintiff had a physical impairment. The ALJ then used Appendix 2 as a framework in determining that the plaintiff was not disabled.

We have carefully scrutinized the record of the plaintiff. The record is devoid of any evidence which would support the fact that the plaintiff has a greater physical limitation than that determined by the ALJ. In the instant case, the ALJ has considered all of the evidence in the record. This evidence supports the ALJ's conclusion that the plaintiff is not disabled. We will affirm the ALJ's denial of benefits to the plaintiff.

We recognize that the plaintiff vigorously argues that the ALJ arbitrarily ignored her testimony that she is unable to read and write. The ALJ expressly rejected her contention of illiteracy on the basis of her own description of her ability to perform as a grocery cashier without difficulty. The

ALJ noted that plaintiff's ability to perform cashier's duties was inconsistent with her allegations of illiteracy, and we agree. We find that, at minimum, such duties would require plaintiff to comprehend and evaluate customers' checks, vender's coupons, WIC ("women infants and children") vouchers issued by the Commonwealth of Pennsylvania Department of Health, and a myriad of other written documents over the course of her seven-year tenure. Moreover, we note that plaintiff admitted having finished the seventh grade, a level of education associated with something more than minimal reading comprehension. We find nothing erroneous, therefore, in the ALJ's determination with respect to plaintiff's literacy.